# THE STATE v. ELMER ROREBECK, Appellant.

### Division Two, November 12, 1900.

1. **Enticing Girl From Father, Etc.: MEANING OF "PURPOSE OF PROSTITUTION."** The word prostitution in the statute which makes it a felony to "take away any female under the age of eighteen years from her father, mother . . . . . for the purpose of prostitution or concubinage," means more than a single illicit intercourse or series of illicit acts with the same person; it means promiscuous prostitution, or indiscriminate sexual intercourse with men.

2. ——: ——: **INTENT.** The gravamen of the statutory offense is the purpose or intent with which the female is taken away. It may be committed by a woman, as well as by a man, and the sexual act is not at all necessary to the commission of the statutory crime.

3. ——: ——: **INSUFFICIENCY OF EVIDENCE.** The defendant met the prosecutrix, a girl about fifteen years old, at a picnic, and was told by her father and mother not to associate with her. Later in the day he treated her to a glass of lemonade, and asked her if she was ready to go to her sisters, about eleven miles distant. She con-

sented to go with him in his buggy, and she says that on the way he "insulted her," and she yielded, and he had illicit intercourse with her, and told her he wanted her to act the same way with her brother-in-law, but took her to her sister's, and left her there, went to his home, and never had intercourse with her again. Later, she went to Dakota with her brother-in-law, who was an uncle of defendant, and she says she had sexual intercourse with him on the way. Nine or ten months after the first illicit act, she gave birth to a child. *Held,* that this evidence was not sufficient to convict the defendant of taking the girl from her father or mother for the purpose of prostitution.

Appeal from Atchison Circuit Court.—*Hon. Gallatin Craig,* Judge.

REVERSED.

*C. A. Anthony* and *Hunt & Bailey* for appellant.

(1) This offense, if an offense has been committed, was not proven by the State. There is no doubt about a wrong having been committed, but the evidence wholly fails to connect this defendant with that wrong. It is the duty of the court to protect the defendant, and where as in this case, there is an entire absence of evidence tending to prove the gravamen of the offense, the instructions asked should have been given. Hyde v. Railroad, 110 Mo. 272; State v. Matthews, 20 Mo. 55; State v. Patrick, 107 Mo. 147; State v. Sharp, 106 Mo. 106. (2) The indictment charges but one offense—that of taking away for the purpose of prostitution. State v. Gibson, 111 Mo. 72, l. c. 98; Corn v. Cook, 12 Met. 93; State v. Ruhl, 8 Iowa, 447. (3) The taking away for mere sensual gratification will not sustain the charge, "taking away for the purpose of prostitution." State v. Gibson, 111 Mo. 92, l. c. 98; State v. Gibson, 108 Mo. l. c. 580; Corn v. Cook, 12 Met. 93; State v. Ruhl, 8 Iowa 447. (4) There must be either an intent or purpose under this indictment to take the girl away for the purposes of prostitu-

tion.   The evidence of the prosecutrix, if it proves anything, proves that defendant took her for his own gratification— that is, if we are to believe the prosecutrix.   State v. Round, 82 Mo. 679; State v. Gibson, 111 Mo. 92, loc. cit. 95; State v. Johnson, 115 Mo. 410; State v. Wilkinson, 121 Mo. 485; State v. Boblet, 131 Mo. 328; State v. Richardson, 117 Mo. 586; Bishop on Statutory Crimes (1 Ed.) 420, sec. 641; If this law is the rule in concubinage, it is also the rule in prostitution.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

The evidence established the taking away of the prosecuting witness, Grace Ogden, by the defendant, and established the purpose necessary to be shown, and went even farther than necessary in that it showed the accomplishment of that purpose.   Every element of the crime was present, as shown by the evidence, and upon no theory could the verdict of the jury be disturbed.   The fact that the defendant took the prosecuting witness away from her home and subsequently had sexual intercourse with her, and directed his uncle to have the same relation with her, is evidence that the taking away was for the purpose of prostitution.   State v. Johnson, 115 Mo. 480.

GANTT, P. J.—The defendant was indicted, tried and convicted of the statutory crime of having, together with one John Rorebeck, feloniously taken away from her father, against his wishes, his daughter, under the age of eighteen years, for the purpose of prostitution.   The offense was charged to have been committed on July 3d, 1897.   From that conviction he appeals to this court.

The question in the case is the sufficiency of the evidence to make out a case under section 3484, Revised Statutes 1889 (section 1842, R. S. 1899), which provides that "every person who shall take away any female under the age of eighteen years from her father, mother, guardian, or any other person having the legal charge of her person, either for the purpose of prostitution or concubinage . . . . . . . shall upon conviction be punished by imprisonment in the penitentiary."

This section has often been construed by this court prior to the last revision of our criminal code. Beginning with State v. Gibson, 111 Mo. 92, it has been uniformly ruled that prostitution in this statute means more than a single illicit act, or series of acts with the same person. It means indiscriminate sexual intercourse with men. [State v. Wilkinson, 121 Mo. 485.]

We have also ruled that the sexual act is not at all necessary to the commission of the crime, as it may be done by a woman, as well as a man. The gravamen of the offense is the purpose or intent with which the female is taken away from her parent or guardian, or person having legal charge of her person.

The evidence in the case is very meagre. The prosecutrix was the daughter of John Ogden, and about fifteen years old. Her sister was the wife of John Rorebeck, the uncle of this defendant. John Rorebeck lived about eleven miles from Tarkio, Atchison county, Missouri. The prosecutrix had lived with John Rorebeck at different times, and defendant had met her at his uncle's house. On July 3, 1897, the defendant and the prosecutrix were in Tarkio. The 3d of July was celebrated in that city that year as Independence Day instead of the 4th of July.

According to the evidence of the father of the girl, he had told defendant in the forenoon of that day to let prosecutrix alone or "he would shoot the wadding out of him."

He admits that up to the time of this threat defendant had not to his knowledge, said anything to prosecutrix, or associated with her during that day. Afterwards he saw defendant treat her to a glass of lemonade on the street. Her mother testified that she told defendant to quit going with her daughter; that she "had enough Rorebecks in her family."

The daughter testified that during the afternoon defendant came up to her on the street and inquired "if she was ready." She asked, "Ready to go where," and he answered, "To her sister's" (Mrs. John Rorebeck's). John Rorebeck does not appear to have been present at any of these conversations. Indeed, he was tried and acquitted of the charge. Prosecutrix consented to go with defendant, and they got in his buggy, and started, but before getting out of town they were caught in a heavy rain, and their clothing thoroughly wet, whereupon they returned to the city, and the prosecutrix stayed all night at Mrs. Birchfield's, and defendant spent the night at the barn where he kept his team.

Next day they started about 10 o'clock in the forenoon and went to her sister's. She says that on the way out, defendant "insulted her," and she yielded, and he had illicit intercourse with her.

He took her to her sister's and left her there, and went to his own home. Defendant denies that he had connection with her, but conceding she told the truth, this is the only time he ever did.

She says, however, that he told her he wanted her to act this way with his uncle, her sister's husband. There is not a syllable of evidence tending to show any prearrangement between defendant and his uncle for such a purpose, or any subsequent assent thereto. After this, the prosecutrix went to Dakota with John Rorebeck. While there she worked out as a domestic, in different families, and in the spring of the next year, she appears at her brother's in Holt

State v. Rorebeck.

county. She was delivered of a child, April 26, 1898. She says she had intercourse with her brother-in-law on the way to Dakota. Defendant testified she asked him to take her to her sister's, and he did so. The general reputation of John Ogden for truth and veracity was shown to be bad.

Does this evidence make out a clear case under the statute? We are clearly of the opinion that it does not.

It falls far short, even if believed, of proof of a taking away for promiscuous prostitution within the meaning of the statute. Certainly the one act with defendant, on the way to her sister's does not establish such intent. She was taken to the home of her sister, in which she had lived as a member of the family. No inference of crime is to be drawn from the place to which she was taken, and surely the fact that defendant never again had connection with her, or solicited her, of itself disproves any purpose, so far as he was concerned, of causing her to become a common prostitute.

As to the desire she says he expressed that she would confer like favors upon his uncle, her sister's husband, it requires too much credulity to entertain it for a moment. Our conclusion is that the conviction was so utterly without substantial legal evidence to support it, that it must be held to have been the result of passion or prejudice, and can not be sustained.

The judgment is accordingly reversed and the prisoner discharged. *Sherwood* and *Burgess, JJ.,* concur.